**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
DR. THOMAS SPINNATO, ARLENE
SPINNATO, DR. TRACEY SPINNATO, and
KRISTEN SPINNATO,

                    Plaintiffs,

          -against-

UNITY OF OMAHA LIFE INSURANCE
COMPANY, MUTUAL OF OMAHA
INSURANCE COMPANY, TAVERNA
ASSOCIATES, INC., "XYZ CORP." (the name
of which is fictitious and currently unknown to
Plaintiffs), and JULIET TAVERNA,

                  Defendants.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-04268 (ADS)(AKT)

FILED
CLERK

12:01 pm, Jun 19, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**John E. Lawlor, Esq.**
*Counsel for the Plaintiffs*
129 Third Street
Mineola, NY 11501

**Gerber Ciano Brady Kelly LLP**
*Counsel for Defendants Unity of Omaha Life Insurance Company and Mutual of Omaha*
*Insurance Company*
228 Park Avenue South, Suite 97572
New York, NY 10003
      By:    Fallyn B. Cavalieri, Esq., Of Counsel

**Kaufman Dolowixh Voluck & Gonzo LLP**
*Counsel for Defendant Taverna Associates, Inc., and Juliet Taverna*
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
      By:    Brett A. Scher, Esq.,
              Adam M. Marshall, Esq., Of Counsel

1

**SPATT, District Judge**:

On July 18, 2017, Dr. Thomas Spinnato ("Thomas"), Arlene Spinnato ("Arlene"), Dr. Tracey Spinnato ("Tracey"), and Kristen Spinnato ("Kristen") (together, the "Spinnatos" or the "Plaintiffs"), commenced this action against Unity of Omaha Life Insurance Company, Mutual of Omaha Insurance Company (together, the "Omaha Defendants"), Taverna Associates, Inc. ("Taverna Associates"), and Juliet Taverna ("Juliet") (together, the "Taverna Defendants") (all together, the "Defendants"). The Plaintiffs allege fifteen New York State causes of action stemming from a series of life insurance policies purchased by the Plaintiffs from 2010 through 2012.

Presently before the Court is a motion filed by the Taverna Defendants pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the complaint as it pertains to the Taverna Defendants for failure to state a claim upon which relief may be granted. For the following reasons, the Taverna Defendants' motion is granted.

## I. BACKGROUND

### A. THE FACTUAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiffs' complaint, and for the purposes of the instant motion, they are construed in favor of the Plaintiffs.

Thomas and Arlene are married retirees that are currently residing in Smithtown, New York. Thomas is a retired physician. Their daughters, Tracey and Kristen, both live in East Moriches, New York. Like her father, Tracey is a physician. Compl. ¶¶ 3-5.

Juliet is an insurance agent, registered with the New York State Department of Financial Services, who is employed by or owns Taverna Associates, a corporation based in Greenwich,

Connecticut.  Juliet managed a portion of the Plaintiffs' wealth for an indeterminate period of time.  Compl. ¶¶ 12-17.

In November 2009, Juliet advised Arlene to consider purchasing $3,800,000 in life insurance.  On January 18, 2010, Transamerica Policy No. 42629921 was issued.  Arlene was listed as the insured and Kristen and Tracey as the owners of the policy.  Thomas and Arlene also purchased two MetLife life insurance policies prior to January 2012.  Policy No. 7402938 was a $1,667,884 policy and Policy No. 7403224 was a $3,000,000 policy.  The Plaintiffs also purchased a second Transamerica Policy, No. 92526800, with a death benefit of $600,000.  Compl. ¶¶ 18-19.

In January 2012, Juliet advised Arlene to surrender the Plaintiffs' four current life insurance policies, which had a combined death benefit of $9,067,884 and purchase a new set of policies.  The Plaintiffs surrendered their four life insurance policies and began transferring the surrender values of them using like-kind exchanges into new insurance policies issued by United of Omaha Life Insurance Company.  At that time, Thomas and Arlene purchased Unity of Omaha Joint and Last Survivor Life Insurance Policy No. BU1375075 with a $3,600,000 death benefit.  Kristen and Tracey were responsible for all premium payments and the policy was executed by all the Plaintiffs.  Compl. ¶ 20.

Three months later, based on Juliet's advice, Arlene purchased Unity of Omaha Universal Life Insurance Policy No. BU1375078 with a $2,600,000 death benefit.  Arlene is listed as the insured on the policy and Tracey is responsible for all premium payments.  Compl. ¶ 21.  The following month, on the advice of Juliet, Thomas purchased Unity of Omaha Universal Life Insurance Policy No. BU1375080 with a $1,667,884 death benefit.  Thomas is the insured under the policy and Tracey is responsible for all premium payments.  Compl. ¶ 22.  These three Unity

of Omaha life insurance policies ("Unity of Omaha Policies") have a combined death benefit of $7,867,884.

In February 2017, the Plaintiffs terminated their relationship with Juliet and Taverna Associates. The Unity of Omaha Policies remained in effect for five years prior to the initiation of this action. The Plaintiffs fully paid the annual premiums; however, fortunately, no death benefit needed to be paid. According to the Plaintiffs, the Unity of Omaha Policies were in excess of the Plaintiffs' coverage needs, were not justified by their assets, and were in excess of their ability to pay the premiums. Compl. ¶¶ 23-33.

## B. The Relevant Procedural History

On July 18, 2017, the Plaintiffs filed the above-mentioned complaint in this Court.

The Omaha Defendants filed their answer on September 18, 2017, whereby they asserted a series of crossclaims against the Taverna Defendants and a counterclaim against the Plaintiffs.

On December 4, 2017, the Taverna Defendants moved under Rule 12(b)(6) to dismiss the complaint, contending that the Plaintiffs' allegations, even if taken as true, fail to plausibly state claims upon which relief can be granted.

## II. DISCUSSION

## A. Standard of Review: Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain

enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second

Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by

two principles:

> First, although a court must accept as true all of the allegations contained in a
> complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals
> of the elements of a cause of action, supported by mere conclusory statements, do
> not suffice. Second, only a complaint that states a plausible claim for relief survives
> a motion to dismiss and [d]etermining whether a complaint states a plausible claim
> for relief will . . . be a context-specific task that requires the reviewing court to draw
> on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129

S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader

is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule

8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home*

*Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In

ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the

legal feasibility of the complaint, not to assay the weight of the evidence which might be offered

in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting

*Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true

a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

For the Plaintiffs' fraud based claims, those portions of the complaint are subject to Rule

9(b)'s heightened pleading standard. To meet Rule 9(b)'s heightened pleading standard, these

elements must be alleged with specificity. Namely, the Plaintiffs must "(1) detail the statements

(or omissions) that the plaintiff[s] contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *accord Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). "In short, a plaintiff must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (internal citations and quotation marks omitted). "Fraud must be pleaded with particularity while 'malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Houraney v. Burton & Assoc., P.C.*, 701 F. Supp. 2d 258, 260 (E.D.N.Y. 2010) (citing FED. R. CIV. P. 9(b); *Iqbal*, 556 U.S. at 662).

## B. STATUTE OF LIMITATIONS

### 1. Negligence, Gross Negligence, Negligent Breach of Regulatory Obligations and Violation of Insurance Law § 2123.

The Taverna Defendants assert that the Plaintiffs' claims based on negligence, gross negligence and violations of Insurance Law § 2123 are time-barred. To state a negligence claim in New York, a plaintiff must allege "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (quoting *Akins v. Glen Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981)). In a gross negligence claim, a plaintiff must also establish "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012) (internal citations and quotations omitted). Both claims are governed by Rule 8(a), rather than the heightened pleading requirements of Rule 9(b). *Saltz v. First Frontier, L.P.*, 485 F. App'x 461,

462-63 (2d Cir. 2012); *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 437 (S.D.N.Y. 2010) ("[C]laims for gross negligence, like claims of negligence, are governed by Rule 8(a), not Rule 9(b) of the Federal Rules of Civil Procedure.").

In a diversity case, federal courts apply the forum state's statute of limitations. *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626-27 (2d Cir. 1998) ("Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York … statutes of limitations." (citing *Guar. Tr. Co. v. York*, 326 U.S. 99, 108-09 (1945))).  Hence, New York's statute of limitations apply.  According to section 214 of the New York Civil Practice Law and Rule ("CPLR"), the statute of limitations for a negligence claim is three years.  CPLR § 214; *Chase Sci. Research Inc. v. NIA Grp. Inc.*, 96 N.Y.2d 20, 30-31 (N.Y. 2001).  A cause of action for common law gross negligence in New York is also governed by a three year statute of limitations. CPLR § 214; *Anunziatta v. Orkin Exterminating Co.*, No. 1:00-CV-0811, 2003 WL 26121223, at *4 (N.D.N.Y. Mar. 31, 2003).  Violations of Insurance Law § 2123 are governed by CPLR § 214(2), which subjects them to a three-year statute of limitations.  *Dolce v. Nw. Mut. Life Ins. Co.*, 708 N.Y.S.2d 327 (2d Dep't 2000).  The statute begins to run at the time the allegedly false or misleading statement is made.  *See id.*

A negligence claim against an insurance agent or broker does not occur when the wrongdoing is discovered; it accrues when the act takes place.  Here, that occurred on the date that the given policy was purchased.  *See Morse Diesel Int'l v. CAN Ins. Cos.*, 707 N.Y.S.2d 499, 501 (2d Dep't 2000).  According to the complaint, the last of the Unity of Omaha Policies was issued in May 2012.  *See* Compl. ¶ 22; *see also One Beacon Ins. v. Terra Firma Constr. Mgmt. & Gen. Contracting, LLC*, No. 02-Civ-7492, 2004 WL 369273, at *3 (S.D.N.Y. Feb. 26, 2004) (citing *Mauro*, 756 N.Y.S.2d at 612-13).  As such, without the benefit of tolling or any type of exception,

the Plaintiffs had until May of 2015 to file suit for negligence or gross negligence as well as violations of Insurance Law § 2123. This portion of the lawsuit was time-barred more than two years when this complaint was filed.

### a. Special Relationship

Typically, "insurance brokers 'have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage.'" *Voss v. Netherlands Ins. Co.*, 22 N.Y.3d 728, 734 (N.Y. 2014); *Am. Bldg. Supply Corp. v. Petrocelli Grp., Inc.*, 19 N.Y.3d 730 (N.Y. 2012) (internal citations omitted). As "[i]nsurance agents or brokers are not personal financial counselors and risk managers … [i]nsureds are in a better position to know their personal assets and abilities to protect themselves more so than general insurance agents or brokers." *Murphy v. Kuhn*, 90 N.Y.2d 266, 273 (N.Y. 1997).

The Plaintiffs argue that a special relationship existed between the Taverna Defendants and the Plaintiffs such that the Taverna Defendants owed additional duties beyond that of a normal insurance agent or broker. To allege a special relationship, the Plaintiffs must contend that one of the following "three exceptional situations" exist:

> (1) the agent receives compensation for consultation apart from the payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on.

*Voss*, 22 N.Y.3d at 735 (quoting *Murphy*, 90 N.Y.2d at 272); *see also Curanovic v. N.Y. Cent. Mut. Fire Ins. Co.*, 762 N.Y.S.2d 148, 151-52 (3d Dep't 2003). These situations are rarely applied and considered "exceptional" by New York courts. *See Murphy*, 90 N.Y.2d at 272. "[S]pecial relationships in the insurance brokerage context are the exception, not the norm[.]" *Voss*, 22

N.Y.3d at 736. The insured must carry the burden of demonstrating that such a situation exists. *Id*. at 733.

The Plaintiffs have failed to establish that their relationship with the Taverna Defendants was one of the "exceptional situations: that created additional obligations for the Taverna Defendants. The first "exceptional situation" is inapplicable as the Plaintiffs have failed to plead that the Taverna Defendants received any compensation for any type of consultation.

To satisfy the second "exceptional situation," "courts have generally required that the insured make a specific request about the feature of the proposed insurance at issue in the subsequent suit." *Holborn Corp. v. Sawgrass Mutual Ins. Co.*, No. 16-cv-09147, 2018 485975, at *9 (S.D.N.Y. Jan. 17, 2018). A "lack of initiative or personal indifference" precludes this exception. *Murphy*, 90 N.Y.2d at 271. In *Voss*, the New York Court of Appeals held that the exception applies when the plaintiff asked the broker whether a $75,000 insurance policy would be sufficient for the plaintiff's business, based on its financials, and the broker assured her that the policy was appropriate. *Voss*, 22 N.Y.3d at 734-36. The Court declined to grant summary judgment because the parties "discussed business interruption insurance from the inception of their business" and the broker obtained relevant business data to analyze and ease the plaintiff's concerns regarding the adequacy of the coverage. *Id*. at 735. In another case, the New York Court of Appeals declined to hold that the exception applied when a plaintiff "never asked to increase the liability limits [and] there [was] no indication that [he/she] ever inquired or discussed with [the insurer] any issues involving the liability limits of the … policy." *Murphy*, 90 N.Y.2d at 271.

The Plaintiffs have failed to allege that a conversation occurred between themselves and Juliet regarding the applicability of the policies to their particular financial situation, the affordability of the premiums, or the suitability of the death benefits. The vast majority of the

allegations relate to omissions by Juliet rather than any particular discussions that could potentially be relied on to procure or alter insurance. The only affirmative misrepresentation alleged is that Juliet "fail[ed] to explain the non-guaranteed elements of the [Unity of Omaha Policies] and … stat[ed] and/or impl[ied] that the payment or amount of the non-guaranteed elements was guaranteed." Compl. ¶ 40. There is no contention that the Plaintiffs made any affirmative request of the Taverna Defendants or inquired as to any aspect of the Unity of Omaha Policies. The Plaintiffs' lack of initiative at the time these policies were purchased are more reminiscent of the facts of *Murphy* rather than of *Voss*.

Further, the vague allegation that the Plaintiffs agreed to purchase the Unity of Omaha Policies "[b]ased on [Juliet]'s recommendations" is too vague and common to create a special relationship with an insurance broker. If the Court were to rule otherwise, "courts would be required to find the existence of a special relationship in nearly every insurance purchase and th[is] exception would swallow the general rule." *Holborn Corp.*, 2018 WL 485975, at *9 (citing *Voss*, 22 N.Y.3d at 734-36).

The third "exceptional situation," or the "course of dealing" exception also fails to apply to this situation. This exception is typically only found when there is a "longstanding relationship, the client is relatively unsophisticated, and the broker exercises significant decision-making control over the procurement of insurance." *Tracey Road Equip., Inc. v. Ally Fin., Inc.*, No. 5:18-CV-0011, 2018 WL 1578160, at *4 (N.D.N.Y. Mar. 29, 2018). In *Tracey*, Judge Kahn examined the recent jurisprudence of New York courts with regard to this exception and noted two illustrative examples:

> [I]n *Finch v. Steve Cardell Agency*, the client—a rodeo host—relied on an insurance broker to procure rodeo insurance policies for "at least six years." 25 N.Y.S.3d 441, 443 (App. Div. 2016). The client testified that he "knew little about

insurance," never reviewed any of the insurance policies that the broker procured, and "insurance certificates were the only documents ever provided to him." *Id*. Based on this testimony, the Court held that a triable issue of fact existed regarding whether the client and broker had a special relationship. *Id*. Similarly, in *South Bay Cardiovascular Association, P.C. v. SCS Agency, Inc.*, the client and broker had a five-year long relationship, and the client's employee responsible for finding insurance coverage never read the insurance policies that the broker procured. 963 N.Y.S.2d 688, 691 (App. Div. 2013). In fact, the broker told the employee that it "did not expect her to read the insurance policies." *Id*. Based on this evidence, the Court held that a triable issue of fact remained regarding whether the parties had a special relationship. *Id*.

2018 WL 1578160, at *4. On the other hand, a claim that is based predominantly on a long-standing client relationship is insufficient. *See, e.g.*, *Scotto Princeton, LLC v. Felsen Assocs., Inc.*, 807 N.Y.S.2d 546, 549 (N.Y. Sup. Ct. 2005).

The Plaintiffs have failed to allege the "course of dealing" exception to the limited role of an insurance broker. While the complaint does state that Juliet was the Plaintiffs' financial advisor, the pleadings are devoid of *any* allegations that Juliet ever provided financial advice to the Plaintiffs that was not insurance related. There is nothing in the complaint that can allow this Court to conclude that Juliet provided financial advice on the Plaintiffs' other assets; that she executed any additional transactions for the Plaintiffs; or that they regularly met or spoke regarding finances. Instead, it focuses on the Taverna Defendant's role in acquiring the insurance products at-issue. The Plaintiffs allegations are confined exclusively to Juliet's role as an insurance broker, not as a broader financial advisor.

Moreover, the complaint fails to allege the long-standing client relationship that is characteristic of the "course of dealing" exception. The earliest interaction between Juliet and the Plaintiffs that is noted in the complaint occurred in November 2009. Approximately two and a half years later, the Plaintiffs executed their final life insurance policy with the Taverna Defendants. Although the complaint does note that Juliet contacted the Plaintiffs in February 2017

to "advise [the] Plaintiffs to change their insurance policies," Compl. ¶ 33 n.4, there is no indication that this was part of an ongoing business relationship, or that there was any contact in the almost five years after the Plaintiffs purchased their last policy. This lack of a long-standing, continuous relationship is suggestive of a typical insurance broker relationship, rather than the special relationship that the Plaintiffs claim. Therefore, even in the light most favorable to the Plaintiffs, and drawing all inferences in their favor, the complaint does not successfully allege a "course of dealing" exception.

The Court also rejects the Plaintiffs' contention that "specific wrongs *did* occur each time Plaintiffs paid a premium under the [Unity of Omaha Policies]." DE 36 at 16 (emphasis in original). For the purposes of calculating the applicable statute of limitations, premium payments of life insurance policies that were in effect do not constitute independent acts, only on occasions where the Plaintiffs suffered damages. *Hudson Envelope Corp. v. Klausner*, 670 N.Y.S.2d 104 (1st Dep't 1998). Consequently, they are irrelevant for a statute of limitations analysis.

Accordingly, the complaint fails to successfully allege a continuing violation based on a special relationship or continuing duty to the Plaintiffs.

### b. Equitable Estoppel

The Plaintiffs' allege that their claims of gross negligence, negligence, and violations of Insurance Law § 2123 are timely due to the doctrine of equitable estoppel.

As the Plaintiffs' claims are limited to state law causes of actions, federal common law tolling is inapplicable. *Pricaspian Dev. Corp. (Texas) v. Royal Dutch Shell, PLC*, 382 F. App'x 100, 102 (2d Cir. 2010) ("In diversity cases, state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." (internal citations and quotation marks omitted)).

The Plaintiffs' attempt to raise the state law doctrine of equitable estoppel is similarly inapplicable. "Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). It "prevents one from denying his own expressed or implied admission which has in good faith been accepted and acted upon by another." *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179 (4th Dep't 1980). To successfully allege equitable estoppel, "the party seeking estoppel must demonstrate, with respect to himself, a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position." *River Seafoods Inc. v. JPMorgan Chase Bank*, 796 N.Y.S.2d 71 (1st Dep't 2005) (citing *BWA Corp. v. Alltrans Express U.S.A. Inc.*, 493 N.Y.S.2d 1 (1st Dep't 1985)); *Airco Alloys Div.*, 430 N.Y.S.2d 179). In addition, the Plaintiffs must assert:

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently seeks to assert; (2) intention, or at least expectation, that such conduct will be acted upon by the other party; and, in some situations, knowledge, actual or constructive, of the real facts

*BWA Corp.*, 493 N.Y.S.2d 1 (internal citations omitted). State courts have consistently implemented a "rather restrictive" interpretation of the doctrine. *See Holm v. C.M.P. Sheet Metal, Inc.*, 455 N.Y.S.2d 429 (4th Dep't 1982); *McLaughlin v. Berle*, 418 N.Y.S.2d 246 (3d Dep't 1979). "[T]he doctrine of equitable estoppel is to be invoked sparingly and only under exceptional circumstances." *Tang v. Jinro Am., Inc.*, No. 03 Civ. 6477, 2005 WL 2548267, at *5 (E.D.N.Y. Oct. 11, 2005) (quoting *Badgett v. N.Y.C. Health & Hosps. Corp.*, 641 N.Y.S.2d 299, 300 (1st Dep't 1996)).

In the instant matter, the Plaintiffs have failed to allege that they are entitled to the benefits of the doctrine of equitable estoppel. They have not "establish[ed] that extraordinary

circumstances prevented [them] from filing [their] claim on time, and that [they] acted with reasonable diligence throughout the period [they seek] to toll." *Prada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (citing *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013)). "As the cases make clear, the doctrine of equitable estoppel requires … that the defendant ma[k]e an actual misrepresentation or commit[] some other affirmative wrongdoing." *Powers Mercantile Corp. v. Feinberg*, 490 N.Y.S.2d 190 (1st Dep't 1985), *aff'd*, 67 N.Y.2d 981 (N.Y. 1986); *accord Simcuski v. Saeli*, 44 N.Y.2d 442, 449 (N.Y. 1978) (holding that in order to be estopped from pleading a statute of limitations defense, the "plaintiff [must be] induced by fraud, misrepresentations or deception to refrain from filing a timely action"). The Plaintiffs fail to allege affirmative conduct subsequent to the initial wrongdoing. The only affirmative acts that are alleged in the complaint were not separate from the initial conduct; they were part of it.

Furthermore, in order for equitable estoppel to apply, the alleged affirmative misrepresentation or fraudulent act "must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough[.]" There is no allegation that contends that any of Juliet's actions were intended to prevent the Plaintiffs' from filing suit. Rather, the Plaintiffs contend that Juliet's actions were intended "to generate excessive and unnecessary premiums and commissions for herself and the Corporate Defendants from [the] Plaintiffs." Compl. ¶ 152. This motivation cannot form the basis of equitable estoppel.

Finally, without affirmative conduct, "the plaintiff must demonstrate a fiduciary relationship … which gave the defendant an obligation to inform [the plaintiff] of facts underlying the claim." *Zumpano v. Quinn*, 6 N.Y.3d 666, 675 (N.Y. 2006) (internal citations omitted). As

discussed above, the Plaintiffs have not successfully alleged a fiduciary relationship with the Taverna Defendants.

Accordingly, the doctrine of equitable estoppel is inapplicable to the instant action.

Applying the three-year limitations periods, the Plaintiffs' second (gross negligence), fourth (negligence – suitability), fifth (negligence – breach of regulatory obligations), and tenth (Insurance Law § 2123) claims are untimely. The Plaintiffs' second, fourth, fifth, and tenth claims are dismissed.

### 2. Fiduciary Duty

"New York law does not provide a single statute of limitations for breach of fiduciary duty claims. Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (N.Y. 2009). "Where the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214(4), which has a three-year limitations period." *Id*; *accord Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942 (2d Cir. 1998). If equitable relief was being sought, a six-year statute of limitations period applies. *IDT Corp.* 12 N.Y.3d at 139. If the claim is based on fraud, then CPLR § 213(8) also applies a six-year period in addition to a two-year discovery rule. *Id*; *Klein v. Gutman*, 784 N.Y.S.2d 581 (2d Dep't. 2004) ( "[A] cause of action alleging breach of fiduciary duty is based on allegations of actual fraud; it is subject to a six-year limitations period.").

In order for CPLR § 213(8) to apply, the fraud claim must be "essential" to the breach of fiduciary duty claim. *Id*. If the fraud claim is "incidental", the shorter limitations period applies. *See Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 545 (2d Cir. 1999). To determine whether or not the fraud claim is "essential" or "incidental," the Court must examine the "gravamen" of the

claims. *See Marketxt Holdings Corp. v. Engel & Reinman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010). If "the alleged fraud is merely 'the means of accomplishing the breach and adds nothing to the causes of action'", the fraud claim is "incidental" to the fiduciary duty claim. *Powers Mercantile Corp.*, 490 N.Y.S.2d 190 (1st Dep't 1985), *aff'd*, 67 N.Y.2d 981 (N.Y. 1986). "A fraud action is not incidental only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim." *Corcoran*, 202 F.3d at 545; *accord Midwest Mem'l Grp., LLC v. Int'l Fund Servs. (Ireland) Ltd.*, No. 10 Civ. 8860, 2011 WL 4916407, at *5 (S.D.N.Y. Oct. 17, 2011).

The underlying facts that makeup the Plaintiffs' breach of fiduciary duty claim are identical to those that represent the core of the fraud claim. *See* Compl. ¶¶ 15-62, 67-76, 111-15. The assertion that the Taverna Defendants "ma[de] material misrepresentations and/or omissions of material facts…; recommend[ed] unsuitable insurance products; ma[de] unsuitable recommendations of insurance products without full disclosure of the benefits and advantages to the Plaintiffs; ma[de] unsuitable recommendations of insurance products without full disclosure required by statute and/or regulation; and [made] unsuitable recommendations of insurance products to the Plaintiffs, [which] favor[ed] [Juliet's] interests over the Plaintiffs without disclosing the benefits sought and to be received by the Defendants[,]" Compl. ¶ 114, although alleged in connection with the fiduciary duty claim, could have also been taken from the portion of the complaint dedicated to fraud. The alleged injuries and relief sought are also the same. *See* Compl. ¶¶ 76, 115. The Plaintiffs seek (1) rescission; (2) monetary damages believed to be in excess of $800,000; (3) punitive damages; and (4) pre-judgment interest to redress identical injuries. *Id.*

The breach of fiduciary duty claim and the fraud claim are indistinguishable and thus, the fraud claim is merely incidental thereto. *See N.Y. Seven-Up Bottling Co. v. Dow Chem. Co.*, 466 N.Y.S.2d 478 (2d Dep't 1983) ("Where the allegations of fraud are only incidental to another cause of action, the fraud Statute of Limitations cannot be invoked."), *aff'd*, 61 N.Y.2d 828 (N.Y. 1984). Accordingly, the six-year statute of limitations does not apply to the fiduciary duty claim.

The Plaintiffs attempt to salvage their breach of fiduciary duty claim by asserting that the statute of limitations begins to run only when the Taverna Defendants either "openly repudiated" their duty or the relationship terminated. *See* DE 36 at 14. In New York State, the open repudiation doctrine states that "the limitations period for claims arising out of a fiduciary relationship does not commence 'until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated.'" *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) (quoting *Westchester Religious Inst. v. Kamerman*, 691 N.Y.S.2d 502, 503 (1st Dep't 1999)). The purpose of this doctrine is to "protect beneficiaries in the event of breaches of duty by fiduciaries … that is, in circumstances in which the beneficiaries would otherwise have no reason to know that the fiduciary was no longer acting in that capacity." *Access Point Med., LLC v. Mandell*, 963 N.Y.S.2d 44 (1st Dep't 2013). Such an open repudiation is required to be "clear and made known to the plaintiff." *Evangelista v. Mattone*, 844 N.Y.S.2d 74 (2d Dep't 2007); *In re Velsor's Estate*, 243 N.Y.S.2d 477, 478 (N.Y. Surr. Ct. 1963) (remarking that "acts which have been held to be sufficient to support a repudiation" must be "unequivocal," and that "proof of repudiation [must be] clear and satisfactory"). The party "seeking the benefit of the Statute of Limitations defense" bears the burden to prove that an open repudiation transpired. *Matter of Rodken*, 705 N.Y.S.2d 429 (3d Dep't 2000).

The open repudiation doctrine only applies to a plaintiff seeking equitable relief, not one seeking monetary damages. *Access Point Med., LLC*, 963 N.Y.S.2d at 44; *Kaszirer v. Kaszirer*, 730 N.Y.S.2d 87 (1st Dep't 2001) ("[T]he requirement of a clear repudiation applies only to claims seeking an accounting or other equitable relief."). While the Plaintiffs do seek rescission of the Unity of Omaha Policies, this form of relief is sought against the Omaha Defendants. The Plaintiffs only seek monetary compensation from the Taverna Defendants. As such, the open repudiation doctrine is inapplicable. *See Willensky v. Lederman*, No. 13–cv–7026, 2015 WL 327843, at *10 & n. 21 (S.D.N.Y. Jan. 23, 2015).

Accordingly, the Plaintiffs' seventh (breach of fiduciary duty) claim is subject to a three-year Statute of Limitations and is therefore also time-barred.

## C. FRAUD

The Taverna Defendants argue that the Plaintiffs fail to plead enough facts to allege a material misrepresentation or omission, and that the fraud claim lacks scienter and justifiable reliance.

To state a claim for fraud under New York State law, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *accord Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (N.Y. 2009) (same). According to Rule 9(b), claims of fraud must be pled with particularity. An affirmative misrepresentation claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting

*Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)); *Mills*, 12 F.3d at 1175. If a plaintiff is alleging fraudulent concealment, he/she must specify: "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664-65 (S.D.N.Y. 2007) (citing *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y.2000)).

The Taverna Defendants' main contention is that the documentary evidence submitted forecloses the Plaintiffs' fraud claims. Neither party addresses the suitability of using these documents for the purpose of adjudicating this motion.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F32 Capital Partners, LLC*, No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citations and quotation marks omitted); *accord Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d

25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L.Ed. 2d 179 (2006) ); accord *Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010).

The Court may properly consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Accordingly, the court may consider the insurance documents attached to the Taverna Defendants' motion.

The Plaintiffs allege a single affirmative misrepresentation, that the Taverna Defendants "inform[ed] Plaintiffs in or about 2012 that the [Unity of Omaha Policies] … provided their heirs with a benefit of $7,800,000 upon their death for an annual premium of $85,780, without explaining, or even mentioning, the non-guaranteed elements of the policy[.]" This contention is contradicted by the illustrations presented to and signed by the Plaintiffs. These documents demonstrated that the Plaintiffs did receive documents that explain that the non-guaranteed elements illustrated in the documents were not guaranteed. The Plaintiffs acknowledged receipt of these documents in that they "received a copy … and underst[ood] that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The agent … told me they are not guaranteed." Declaration of Juliet Taverna ("Taverna Decl."), Exhibits H, K, N. Accordingly, the Plaintiffs fail to allege fraud as it pertains to this alleged affirmative misrepresentation.

The remainder of the alleged fraud committed by the Taverna Defendants resulted from a series of nondisclosures. The complaint alleges that Juliet "fail[ed] to present the illustration[s] for the [Unity of Omaha Policies] in their entirety," Compl. ¶¶ 38, 71, "fail[ed] to inform Plaintiffs

that the [Unity of Omaha Policies'] benefits were not materially better than Plaintiffs' existing insurance coverage;" *Id.* ¶ 71, "fail[ed] to inform Plaintiffs that the death benefit in the various [Unity of Omaha Policies] could decrease, [that] the premiums of the polic[ies] could increase in order to maintain the policy amount, and/or the [Unity of Omaha Policies] could lapse in their entirety under certain circumstances," *Id.* ¶¶ 32, 71, "fail[ed] to inform Plaintiffs of the benefits being gleaned by the Defendants," *Id.* ¶ 71, "fail[ed] to inform Plaintiffs of the significant up-front costs … and that the bulk of the money "dumped-in" to the [Unity of Omaha Policies] would be paid as commissions to the Defendant[,]" *Id.* ¶ 71, and that the Plaintiffs "fail[ed] to provide Plaintiffs with the [required] statutory disclosures." *Id.* ¶ 71.

Many of these alleged nondisclosures are also directly contradicted by documentary evidence presented by the Taverna Defendants. The above-mentioned insurance illustrations also refute the allegation that the Taverna Defendants "fail[ed] to inform Plaintiffs of the significant up-front costs … and that the bulk of the money 'dumped-in' to the [Unity of Omaha Policies] would be paid as commissions to the Defendant[.]" *Id.* ¶ 71. The illustrations identify the exact amount being rolled-over from the Plaintiffs' prior policies and how that money was being applied to the Unity of Omaha Policies. *See* Taverna Decl., Exs. H, K, N.

In addition, the Plaintiffs' allegation that the Taverna Defendants "fail[ed] to inform Plaintiffs that the death benefit in the various [Unity of Omaha Policies] could decrease, [that] the premiums of the polic[ies] could increase in order to maintain the policy amount, and/or the [Unity of Omaha Policies] could lapse in their entirety under certain circumstances," *Id.* ¶¶ 32, 71, is refuted by the record. The policy illustrations conclusively state that "the policy's death benefit will remain in force, for as long as certain requirements described in the policy are met[.]" Taverna Decl., Ex. K. They continue to explain the conditions which would cause the policy to lapse,

which include neglecting to pay the annual premiums or taking out a loan against the policy. *Id*. This precludes the Plaintiffs' ability to claim fraudulent omission.

While some of those alleged nondisclosures are not contradicted by the record, the current pleading is too vague to satisfy Rule 9(b)'s particularity requirement.

The Plaintiffs' allegation that the Taverna Defendants "fail[ed] to inform Plaintiffs that the death benefit in the various [Unity of Omaha Policies] could decrease, [that] the premiums of the polic[ies] could increase in order to maintain the policy amount, and/or the [Unity of Omaha Policies] could lapse in their entirety under certain circumstances," does not meet Rule 9(b)'s pleading requirements. This nondisclosure does not adequately specify what conditions or circumstances would have to occur in order for these various scenarios to come to pass. It fails to explain the context of the omission and the circumstances in which the Plaintiffs were allegedly misled.

The contention that the Taverna Defendants "fail[ed] to present the illustration[s] for the [Unity of Omaha Policies] in their entirety," is vague and conclusory. Based on this allegation, it is unclear to the Court what exactly was omitted and fails to reveal any of the relevant circumstances. Similarly, even if the Taverna Defendants "fail[ed] to inform Plaintiffs that the [Unity of Omaha Policies'] benefits were not materially better than Plaintiffs' existing insurance coverage," the Plaintiffs have not alleged a fraudulent omission. This allegation is also too vague to satisfy Rule 9(b)'s requirements. What constitutes "materially better" can constitute an opinion and mean different things to different people. Without knowing what "materially better" is referring to, the Court is unable to determine whether there was an omission in the first place, let alone understand the circumstances. Furthermore, the Plaintiffs' allegation that the Taverna Defendants "fail[ed] to inform Plaintiffs of the benefits being gleaned by the Defendants" is

similarly flawed. This amorphous contention falls short of Rule 9(b)'s pleading standard. If the Plaintiffs are alleging that the Taverna Defendants failed to inform them that their insurance broker received commissions for the issuance of their policies, that omission fails to rise to a level amounting to fraud. *See Levitin v. Painwebber, Inc.*, 159 F.3d 698, 702 (2d Cir. 1998).

Finally, the Plaintiffs "fail[ure] to provide Plaintiffs with the [required] statutory disclosures," *Id.* ¶ 71, cannot form the basis of a fraudulent omission claim. Even if the Taverna Defendants' failed to provide the Plaintiffs with the disclosures required by New York Insurance Regulation 60, it would not constitute a fraudulent omission. Violations of state insurance regulations do not give rise to an independent duty of reasonable care that can form the basis of a common law tort. *See N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 308 (N.Y. 1995). Even if that were not the case, the Plaintiffs' allegation fails to plead with sufficient particularity what "material information" was not disclosed and what information is required to make an "informed decision." Accordingly, this allegation fails to satisfy Rule 9(b)'s pleading requirements.

To successfully plead a fraud claim in New York, the Plaintiffs are required to allege scienter. The Taverna Defendants assert that (1) the Plaintiffs' generalized allegations of a profit-seeking motivation are insufficient as a matter of law; (2) there are no allegations to suggest conscious misbehavior or recklessness; and (3) the documentary evidence contradicts any notion of fraudulent intent.

To demonstrate fraudulent intent, a plaintiff is required to plead "facts that give rise to a strong inference of fraudulent intent." *Nakahata v. New York-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 198 (2d Cir. 2013) (citing *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004)); *Lerner*, 459 F.3d at 290 (same). This requires a plaintiff to plead either (1) "that defendants had either 'motive and opportunity to commit fraud,' or [(2)] allegations of

'strong circumstantial evidence of conscious misbehavior or recklessness.'" *Prickett v. N.Y. Life Ins. Co.*, 896 F. Supp. 2d 236, 246 (S.D.N.Y. 2012) (quoting *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681-82 (2d Cir. 2012)); *Lerner*, 459 F.3d at 290-91 (same); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (same).

To raise a strong inference of fraudulent intent by motive and opportunity, a defendant must have "benefitted in some concrete and personal way from the purported fraud." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000)). Yet, "[m]otives that are common to most corporate officers … do not constitute 'motive' for the purposes of this inquiry." *Id*. Consequently, a general profit-seeking motivation, which is a common motivation of corporate officers, is insufficient to allege fraudulent intent. *See Landesbank Baden-Wurttemberg*, 478 F. App'x at 681-82; *Prickett*, 896 F. Supp. 2d at 247 ("[T]he profit motive common to all businesses is insufficient to establish scienter."); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03-cv-8208, 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006) ("[A]llegations that defendants 'stand[ ] to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b).'" (quoting *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1327 (S.D.N.Y. 1997))); *Harrell v. Primedia, Inc.*, No. 02-cv-2893, 2003 WL 21804840, at *3 (S.D.N.Y. Aug. 6, 2003) ("The mere fact that Defendants had a desire to see the company succeed does not provide a motive to engage in serious fraud.").

The Plaintiffs' primary contention is that the Taverna Defendants' motivation "to generate significant commissions … goes beyond mere profit-seeking." DE 36 at 10. The Court disagrees. While the Plaintiffs allege an assortment of fraudulent omissions by the Taverna Defendants, the Plaintiffs' complaint is noticeably silent as to motivation or intent. There is no suggestion that the

Taverna Defendants had any other motive distinct from the profit motive common to all insurance brokers. The Plaintiffs have failed to allege any motivation irrespective of financial gain. Accordingly, there are insufficient factual allegations in the complaint to support motive or opportunity to commit fraud. *Sloane Overseas Fund, Ltd. v. Sapiens Int'l. Corp., N.V.*, 941 F. Supp. 1369, 1382 (S.D.N.Y. 1996) (citing *In re Integrated Res. Real Estate Ltd. P'ships Secs., Litig.*, 815 F. Supp. 620, 670 (S.D.N.Y.1993)).

The Plaintiffs have also failed to establish fraudulent intent through strong circumstantial evidence of conscious misbehavior or recklessness. "[R]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Chill*, 101 F.3d at 269 (internal citations omitted). It is properly alleged with specific contentions regarding a "defendant['s] knowledge of facts or access to information contradicting" fraudulent statements or omissions. *Novak*, 216 F.3d at 308.

The Plaintiffs attempt to use the allegation that the Taverna Defendants "deliberate[ly] act[ed] in avoiding compliance with New York's disclosure requirements" as evidence of scienter. DE 36 at 10. As detailed above, the Plaintiffs' fraud allegations related to the lack of compliance with New York's insurance regulations cannot form the basis for a fraud claim. These accusations cannot provide evidence of "strong circumstantial evidence of conscious misbehavior or recklessness." *Prickett*, 896 F. Supp. 2d at 246. After stripping away the regulatory-based portions of the fraud claim, the remainder fails to allege scienter with the requisite level of specificity. The unsupported contention that the Taverna Defendants deliberately took advantage of the Plaintiffs' lack of financial sophistication is too conclusory to support the Plaintiffs' allegation. *See Shields*, 25 F.3d at 1128 ("[T]he relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." (internal

quotation marks and citation omitted)).  While the contention that Juliet failed to inform the Plaintiffs of certain benefits and risks regarding the Unity of Omaha Policies is disturbing, these actions, in and of themselves do not "represent[ ] an extreme departure from the standards of ordinary care."  *Chill*, 101 F.3d at 269 (internal citations omitted).  Without sufficient factual circumstances indicating why Juliet omitted this information, which would provide strong circumstantial evidence of conscious misbehavior or recklessness, the Plaintiffs fail to allege scienter.

Accordingly, the Plaintiffs' fraud allegations are legally insufficient to demonstrate fraudulent intent.

Finally, the Taverna Defendants contend that the Plaintiffs fail to allege justifiable reliance under the circumstances.  Under New York State common law, to allege a claim for fraud a plaintiff must plead enough facts to demonstrate that relying on the misrepresentation was reasonable.  *See Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337-38 (2d Cir. 2011).  To determine if the reliance is "reasonable," the Court must examine "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."  *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003).

As justifiable reliance "involve[s] many factors to consider and balance, no single one of which is dispositive, … [it is] often a question of fact for the jury rather than a question of law for the court."  *STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011) (internal citations omitted).  Accordingly, it would be inappropriate to make such a determination as a matter of law at this stage.  The Court declines to consider the existence of justifiable reliance at this motion to dismiss.

Although certain factual allegations are contradicted by the record, many of the facts underlying the Plaintiffs' fraud claim are defective because they do not meet the particularity requirements of Rule 9(b) and fail to allege scienter. Accordingly, the Plaintiffs' first claim (fraud) is dismissed with leave to replead.

## D. NEGLIGENT MISREPRESENTATION

The Court also dismisses the negligent misrepresentation claim against the Taverna Defendants, as it is based on the same factual allegations as the fraud claim.

"To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that (1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information given." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014) (quoting *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 82 (S.D.N.Y. 2010) (internal citations omitted), *aff'd*, 485 F. App'x 461 (2d Cir. 2012)). As this Court previously noted,

> the Second Circuit concluded in no uncertain terms, albeit without much in the way of explanation, that claims for negligent misrepresentation under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)." [*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir.2005)]. This conclusion was not surprising given that negligent misrepresentation is often characterized as a "species of fraud," *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV. 8688, 2002 WL 362794, at *16 (S.D.N.Y. Mar. 6, 2002) (internal citation and quotation marks omitted), with the caveat "that instead of having to prove scienter, a plaintiff must prove that there was a 'special relationship' between the parties which imposed upon the defendant a duty to 'speak with care.'" *Banco de La Republica de Colombia v. Bank of New York Mellon*, No. 10 CIV. 536, 2013 WL 3871419, at *10 (S.D.N.Y. July 26, 2013).

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 350 (E.D.N.Y. 2014) (Spatt, J.). As with their fraud claim, the Plaintiffs offer contentions that are either contradicted by the record, or are insufficiently particularized under Rule 9(b). Accordingly, the Plaintiffs' third claim

(negligent misrepresentation) against the Taverna Defendants is dismissed. For those claims that fail to contain the requisite specificity, the Plaintiffs are granted leave to replead.

**E. Constructive Fraud**

The Plaintiffs' constructive fraud claim must also be dismissed as it is predicated on the same facts that attempted to establish their fraud claim. "'Constructive fraud requires establishing [the] same elements [as fraud], except that scienter is replaced by a fiduciary or confidential relationship between the parties.'" *Marketxt Holdings Corp.*, 693 F. Supp. 2d at 396 (quoting *E*TRADE Fin. Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313, 387 (S.D.N.Y.2009)). Courts in the Second Circuit have traditionally applied Rule 9(b) to constructive fraud as it closely resembles the legal elements of a fraud claim. *See, e.g.*, *Burrell v. State Farm and Cas. Co.*, 226 F. Supp. 2d 427, 438-39 (S.D.N.Y. 2002). In addition, the Plaintiffs have not made a genuine effort to differentiate the constructive fraud allegations from the fraud claim since both claims rest on the same set of facts. *See In re Ultrafem Inc. Secs. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) ("Plaintiffs cannot avoid the more stringent requirements of Rule 9(b) by merely inserting boilerplate language into their complaint stating that claims are based in negligence not fraud." (internal citations omitted)). Consequently, the Court will subject the constructive fraud claim to the rigors of Rule 9(b).

As detailed in Section II.C., in the context of fraud, the Plaintiffs' constructive fraud claim is based on allegations that are either contradicted by the record, or are insufficiently particularized under Rule 9(b). Without successfully pleading an actionable misrepresentation or material omission, the constructive fraud claim fails as a matter of law. Accordingly, the Plaintiffs' eighth claim (constructive fraud) against the Taverna Defendants is dismissed. For those claims that fail to contain the requisite specificity, the Plaintiffs are granted leave to replead.

## F. UNJUST ENRICHMENT

Unjust Enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012); *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. 2005) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement."). "Under New York law, to establish a claim of unjust enrichment, a plaintiff must establish three elements: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Fishman v. Philadelphia Fin. Life Assurance Co.*, No. 11-cv-1283, 2016 WL 2347921, at *13 (S.D.N.Y. May 3, 2016) (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)); *Georgia Malone & Co v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (same).

The instant case is not representative of the "unusual" circumstances which provide for an unjust enrichment claim. The Plaintiffs' unjust enrichment claim rehashes and improperly duplicates their fraud claims. *Corsello*, 18 N.Y.3d at 790 ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."). "To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello*, 18 N.Y.3d at 791. As this claim is based on the same set of facts as the fraud claim, the Plaintiffs' thirteenth (unjust enrichment) claim is dismissed as it pertains to the Taverna Defendants. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015); *Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187, 2015 WL 5774459, at *16 (E.D.N.Y. Sept. 30, 2015).

## G. ABANDONMENT

The Taverna Defendants moved to dismiss the Plaintiffs' fifth claim (negligent breach of regulatory obligations), ninth claim (rescission), fourteenth claim (faithless servant) and fifteenth claim (punitive damages). The Plaintiffs did not respond to the Taverna Defendant's arguments in any way. A district court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Williams v. Mirabal*, No. 11 Civ. 366, 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013) (quoting *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)).

In light of the Plaintiffs' failure to address these claims in their opposition papers to this motion, the above-mentioned claims are deemed abandoned. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC,* No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage ..., a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *Robinson v. Fischer*, No. 09 Civ. 8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."); *Adams v. N.Y. Educ. Dep't.*, 752 F.Supp.2d 420, 426 (S.D.N.Y. 2010) ("Repeatedly, [the Plaintiffs'] papers fail to address substantive grounds raised by Defendants' motions, thereby supporting a finding that the underlying claims have been abandoned."); *Thomas v. Atl. Express Corp.*, No. 07 Civ.1978, 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (dismissing the Plaintiff's due process claim after the Plaintiff failed to respond to the portion of the Defendant's brief that pertained to that claim); *Martinez v. Sanders*, No. 02 Civ. 5624, 2004 WL 1234041, at *2-3 (S.D.N.Y. June 3, 2004) (dismissing six of the Plaintiff's claims for failure to address the Defendant's relevant arguments in opposition papers); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11

(S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue ... which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

Accordingly, the Court grants the Taverna Defendants' motion to dismiss the fifth, ninth, fourteenth and fifteenth claims as they pertain to the Taverna Defendants.

## H.  LEAVE TO REPLEAD

FED. R. CIV. P. 15(a)(2) applies to amending the pleadings once the time to do so as a matter of right has expired.  It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Courts have construed the rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim."  *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12-CV-4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits" (quoting *N.Y. v. Green*, 420 F.3d 99, 104 (2d Cir. 2005))).

"The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated ... and 'mere technicalities' should not prevent cases from being decided on the merits." *D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. and Sur. Co.*, No. 96-cv-3995, 2002 WL 32096594, at *8 (E.D.N.Y. Oct. 31, 2002) (quoting *Monahan v. N.Y. City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)).

In the Second Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). A court should deny leave to amend only "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

In the instant matter, the Court finds good cause to allow the Plaintiffs to replead their first, third, and eighth claims as they pertain to the Taverna Defendants. As the Court details in this decision, portions of these claims may be amended to adequately state a claim. However, other aspects of are contradicted by the record and thus, any such amendment would be futile. Accordingly, the Court limits allowance to replead to the portions of the Plaintiffs' first, third, and eighth claims that pertain to those factual allegations that are not contradicted by the record.

### III. CONCLUSION

For the foregoing reasons, the Taverna Defendants' motion to dismiss is granted as follows. The Plaintiffs' second, fourth, fifth, seventh and tenth claims are dismissed as untimely. Further, the Court dismisses the Plaintiffs' ninth, thirteenth, fourteenth and fifteenth claims as they pertain to the Taverna Defendants. The Plaintiffs' first, third, and eighth claims are dismissed without prejudice as they pertain to the Taverna Defendants, with leave to replead.

The Plaintiffs must serve their amended complaint within thirty days from the date of this order.

It is **SO ORDERED**:

Dated: Central Islip, New York

June 19, 2018

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge